UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY MICHAEL McKENDRY,

Plaintiff,

**Hon. Hugh B. Scott**

v.

**18CV1420**

**CONSENT**

**Order**

ANDREW SAUL, COMMISSIONER,

Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 7 (plaintiff), 10 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 5 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 12, Order of Oct. 4, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Timothy McKendry" or "plaintiff") filed an application for disability insurance benefits on September 25, 2014 [R. 10]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de

novo and concluded, in a written decision dated September 25, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on October 11, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on December 6, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 7, 10), and plaintiff duly replied (Docket No. 11). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, forty years old as of the date last insured (June 30, 2015 [R. 12, 18]), has a high school education [R. 17, 12, 18]. Plaintiff's past relevant work includes hose assembler (medium exertion work) and truck driver (medium work, performed as heavy work) [R. 17]. The ALJ later found that plaintiff's residual functional capacity prevented him from returning to this past relevant work [R. 17].

The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine and asthma [R. 12]. Plaintiff also alleges impairments from right knee pain (secondary remote pellet gunshot would), depression, cysts under axilla with right rib pain, and skin eczema. The ALJ found these impairments had minimal limitation to plaintiff's mental or physical ability to perform basic work activities [R. 12].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff alleges that he is unable to work due to several back problems giving him difficulty bending, moving, lifting, standing, walking and squatting [R. 15]. Plaintiff's medical

record showed a history of degenerative disc disease of the lumbar spine [R. 15]. The ALJ noted that plaintiff's physical examinations from onset date through date last insured "generally showed benign findings including essentially normal physical and musculoskeletal examinations, suggesting that treatment [medication and physical therapy] was at least somewhat effective" [R. 15, 346 (Dr. Suliaman), 430-56 (Drs. Willard Ruth and Suliaman), 459-60 (Dr. Cameron Huckell), 516-17 (Dr. Ruth), 520, 523, 526 (Dr. Suliaman)].

At issue here is the ALJ's consideration of the opinions from two treating physicians. Plaintiff's treating physician, Dr. Rosalind Suliaman, examined plaintiff on October 23, 2014, and found that plaintiff could lift or carry 15 pounds occasionally, 10 pounds frequently; stand or walk for less than 2 hours per day; sit for less than 6 hours per day; and is limited in pushing and pulling [R. 333, 340-41, 15]. The ALJ gave this opinion minimal weight because it was inconsistent with clinical notes and not based on objective evidence [R. 15].

Dr. Willard Ruth (identified incorrectly by the ALJ as "Ruth Andrew, MD" [R. 16], plaintiff's treating physician since 2014, on April 4, 2017, reported plaintiff's condition in a Lumbar Spine Treating Medical Source Statement [R. 529] that plaintiff could walk a half block before requiring rest, can sit/stand/walk for less than two hours in a workday, that plaintiff needed to walk around for 20 minutes for five minutes at a time during an 8-hour workday [R. 530-31]. Dr. Ruth found that plaintiff could not lift any weight and could never twist, stoop, bend, crouch or squat, or climb stairs, and should rarely climb ladders [R. 532]. The doctor noted that pain reduced plaintiff's range of motion in the lumbar spine [R. 529, 530]. ALJ also gave this opinion minimal weight, finding that it was inconsistent with the medical evidence

record, including diagnostic imaging [R. 16]   The ALJ also found that Dr. Ruth's opinion was not within his specialty [R. 16].

The ALJ gave great weight to the opinion of consultative examiner, Dr. Donna Miller, who opined that plaintiff had mild limitations for heavy lifting, bending, and carrying [R. 16, 351-55].   The ALJ concluded that Dr. Miller's opinion was consistent with the objective findings in the treatment record and from the doctor's own examination [R. 16, 351].

The ALJ found that plaintiff now had a residual functional capacity (or "RFC") to perform light work, except lifting 20 pounds occasionally, 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours, walking for 6 hours of 8-hour workday; push/pull as much as can lift/carry; frequently reaching overhead to the left, and frequently reaching overhead to the right.   Plaintiff can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, stoop other time—no repetitive stoop, kneel, or crouch, kneel other time, crouch other time, crawl occasionally.   Plaintiff must avoid concentrated exposure to dust, odors, fumes, pulmonary irritants and substances with corrosive or other irritating properties adverse to skin integrity.   Plaintiff's time off task can be accommodated by normal breaks.   [R. 14.]

Given this RFC, the vocational expert opined that plaintiff could not return to his past relevant work [R. 231-33 (interrogatory answer), 17].   The ALJ posed hypotheticals in interrogatory to the vocational expert [R. 10, 229, 230-35].   The expert opined that a hypothetical claimant with similar RFC, age, education, employment and skills as plaintiff could perform such representative light occupations as cashier II, sales attendant, or mail room clerk [R. 18, 233].   The ALJ concluded that plaintiff was not disabled [R. 18].

4

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.     General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the

[Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff now argues that the ALJ erred by failing to provide good reasons for rejecting all treating physician opinions of record (Docket No. 7, Pl. Memo. at 1, 14-21). Plaintiff next contend that the RFC was product of ALJ's lay opinion and not supported by substantial evidence (id. at 1, 22-26).

Defendant responds that the ALJ properly evaluated plaintiff's subjective complaints (Docket No. 10, Def. Memo. at 7-10) [R. 15] and properly considered the medical opinions in the record (id. at 10-14). Defendant argues that the ALJ also properly formulated the RFC (id. at 15-17).

Plaintiff replies that the ALJ still failed to provide good reasons for rejecting the medical opinions of his treating physicians (Docket No. 11, Pl. Reply Memo. at 1-3).

Under Second Circuit case law, the ALJ must follow a two-step procedure for determining the appropriate weight to be given the opinions of treating physicians. First, the ALJ must determine that the opinion was "well-supported by medically acceptable clinical and laboratory and diagnostic techniques and is not inconsistent with the other substantial evidence in the case record," Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019). Second, the ALJ must "explicitly consider" factors such as the frequency, length, nature, and extent of treatment; the

amount of medical evidence supporting the opinion, consistency of the opinion with the remaining evidence, and whether the physician is a specialist, id. at 96, citing Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008).

Here, the ALJ gave minimal weight to Drs. Suliaman and Ruth based upon consistency with the medical record, including their own treatment notes. Reviewing the medical records cited by the ALJ for the benign findings for plaintiff's examinations [R. 15] that led to the conclusion that the opinions of the treating physicians ought to receive minimal weight [R. 16], the reports on plaintiff's musculoskeletal system during these examinations are summarized below. First, Dr. Suliaman examined plaintiff.

| Date | Notes |
|------|-------|
| Apr. 2, 2014 | Musculoskeletal no swelling or deformity, no tenderness to palpation along spine, normal gait, muscle strength, range of motion, no pain elicited on palpation of affected area [R. 528] |
| June 19, 2014 | Musculoskeletal no swelling or deformity, no tenderness to palpation along spine, normal gait, muscle strength, range of motion, no pain elicited on palpation of affected area [R. 523] |
| Oct. 23, 2014 | Musculoskeletal no swelling or deformity, no tenderness to palpation along spine. Range of motion limitations hip forward flexion right 75 degree, left 90-degree, lumbar forward flexion 15-degree, lateral flexion 20 degree [R. 346, 520] |

Dr. Suliaman on October 23, 2014, also found as part of the disability determination report that plaintiff had no abnormality in gait [R. 337], noting that plaintiff complained of low back pain that was treated with physical therapy, vitamin D and NSAID [R. 334, 338]. Plaintiff found to have intermittent symptoms for twenty years, recently worsening; doctor opined that the

expected duration would be one year [R. 334]. Plaintiff's pain had limited his ability to perform his usual duties of daily activities, taking him longer to do things, requiring him to stop and rest [R. 339]. The doctor also found that plaintiff's physical findings were consistent with his level of pain [R. 340]. Dr. Suliaman concluded that plaintiff is limited in lifting, standing, walking, sitting, pushing and pulling as discussed previously [R. 340-41].

Dr. Suliaman said that plaintiff was referred to an orthopedist in 2014 but had not had the first appointment [R. 340]. Orthopedist Dr. Cameron Huckell later examined plaintiff on December 30, 2014, and found that plaintiff's gait was normal, that he did not have to use an assistive device [R. 459]. Dr. Huckell found no paravertebral muscle rigidity [R. 459]. Plaintiff's lumbar range of motion was flexion 20 degrees to 60 degrees, extension 10 degrees to 25 degrees, bending to right 20 degrees to 25 degrees, bending to the left 20 degrees to 25 degrees [R. 459-60].

Plaintiff was examined by Dr. Suliaman in 2015.

| Date | Notes |
|------|-------|
| Sept. 1, 2015 | Musculoskeletal, mild thoracic scoliosis, paraspinal muscle tension LS with pain elicited on range of motion [R. 439] |
| Sept. 4, 2015 | Normal gait and strength [R. 441] |
| Sept. 18, 2015 | Normal gait and strength [R. 444] |

As for Dr. Ruth, he examined plaintiff earlier in 2015 and beyond.

| Date | Notes |
|------|-------|
| Feb. 1, 2015 | Musculoskeletal, no swelling or deformity, tenderness to palpation along lumbar spine, range of motion intact [R. 431] |
| Feb. 11, 2015 | No swelling or deformity, tenderness to palpation along lumbar spine, range of motion intact [R. 517] |
| Mar. 11, 2015 | Musculoskeletal, myalgias and arthralgias, no joint swelling, no muscle weakness [R. 434], |

9

| | examination no swelling or deformity, tenderness to palpation along lumbar spine, range of motion intact [R. 435] |
|---|---|
| Dec. 14, 2015 | No swelling or deformity, no tenderness to palpation along spine, range of motion intact [R. 446] |
| Jan. 20, 2016 | No swelling or deformity, no tenderness to palpation along spine, range of motion intact [R. 451] |
| May 24, 2016 | No swelling or deformity, no tenderness to palpation along spine, range of motion intact [R. 454] |

Dr. Ruth, in April 4, 2017, diagnosed plaintiff with chronic back pain and his prognosis was guarded [R. 529]. Plaintiff had pain in the lumbar region that radiated down his leg [R. 529]. This pain reduced plaintiff's range of motion of the lumbar spine [R. 530]. Then the doctor opined about the functional limitations stated above (lifting, sitting, standing) [R. 531-33].

Plaintiff argues that the ALJ did not provide good reason for giving the opinions of Drs. Suliaman and Ruth minimal weight (Docket No. 7, Pl. Memo. at 14-21; Docket No. 11, Pl. Reply Memo. at 1-3). A review of the record of plaintiff's examinations by both doctors, as well as by Dr. Huckell, establish that the ALJ had substantial evidence for the weight given to these treating sources' opinions. As can be seen above, these examinations (highlighted by the ALJ [R. 15]) show consistently no physical manifestations for plaintiff's back pain, manifesting the inconsistency between the examination observations and the report opinions (see also Docket No. 10, Def. Memo. at 12-13). While the ALJ did not review the factors under 20 C.F.R. § 404.1527(c), that error is **harmless** where good reasons from review of the record, the inconsistency between the medical opinions of these treating physicians and their own examination notes and from this Court's "searching review of the record," Estrella, supra, 925 F.3d at 96 (id. at 14) assures that the treating physician rule here "was not traversed," id.

The record does not state Dr. Ruth's specialty to warrant the ALJ's finding that the doctor's opinion received diminished weight because he was not a specialist (cf. [R. 16])], apparently addressing one factor under § 404.1527(c).

The residual functional capacity assessment made here acknowledged the limitations on plaintiff's abilities to lift and carry, duration he can sit, stand, and walk. Many of these limitations contained in the RFC [R. 14] come from Dr. Suliaman's opinion [R. 340-41]. Plaintiff argues that the ALJ relied upon his lay opinion to formulate plaintiff's RFC because the ALJ rejected the medical opinions of record (Docket No. 7, Pl. Memo. at 22). He contends that the ALJ does not cite in the medical record to plaintiff's ability to lift 20 pounds (id. at 24). Defendant retorts that the RFC contains restrictive findings (Docket No. 10, Def. Memo. at 15), noting that the ALJ considered the entire record, including plaintiff's own statements, in arriving at the RFC (id. at 16) [R. 15, 16].

The ALJ here rationalized plaintiff's ability to perform light work because his degenerative disc disease precluded heavier lifting [R. 16]. Plaintiff has the burden of showing disability through Step Four of the five-step analysis, see Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (Docket No. 10, Def. Memo. at 15), specifically that plaintiff could not lift no more than 20 pounds to qualify for light work, see 20 C.F.R. § 404.1567(b). Plaintiff's only basis for work less strenuous than light exertion work are the opinions of Drs. Suliaman [R. 340] and Ruth [R. 532]. Dr. Suliaman opined that plaintiff could lift a maximum of 15 pounds [R. 340], but her examination notes did not indicate any weight limitations [R. 528, 523, 346, 520, 439, 441, 444], with plaintiff seeing the doctor for other ailments than his back [R. 527, 438, 440, 443]. On October 23, 2014, plaintiff did complain to Dr. Suliaman about back pain,

stating that he had to carry a three-month-old infant [R. 345, 519] at an unstated weight. Dr. Ruth opined that plaintiff could not lift <u>any</u> weight [R. 532], but his treatment notes do not indicate any weight restrictions [R. 430-31, 516-17, 433-34, 435, 446-47, 451, 454, 480-81].

One discrepancy here is the five-pound difference between Dr. Suliman's opinion of the maximum plaintiff can lift or carry and the amount the ALJ determined plaintiff can lift or carry in the RFC.   As plaintiff correctly notes (Docket No. 7, Pl. Memo. at 24), the ALJ does not cite to any medical record supporting this additional five pounds that plaintiff could lift, despite consideration of the entire record.   From this record, it is not clear where the 20-pound limitation comes from, as it is unclear how Dr. Suliaman opined that plaintiff could not lift more than 15 pounds.   Physical exertion for light work, however, is work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b).   The maximum of 15 pounds is within the "no more than 20 pounds" to support the ability to perform light work.   Thus, the RFC here is not the product of the ALJ's lay opinion or consideration of raw medical data.

Plaintiff's motion (Docket No. 7) on this ground is also **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 7) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 10) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), <u>see</u> <u>Curry v. Apfel</u>, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

So Ordered.

_s/Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
March 16, 2020